YARRUT, Judge.
This action arose from a collision between a station wagon, driven by third-party Plaintiff, Gerald A. Tagney, and a pick-up truck driven by Defendant’s employee, Leonard T. Bryant. Northern Insurance Company, as Tagney’s subrogated insurer, sued to recover for property damage to Tagney’s vehicle, alleging the collision was due solely to the negligence of Bryant, an employee of Defendant, who was acting in the course and scope of his employment at the time of the collision. Tagney, not named a party defendant, intervened for his property damage not covered by his insurance, and for personal injuries for a cervical sprain resulting from the accident.
Defendant’s answer denied that Bryant was acting within the course and scope of his employment at the time of the collision, and alleged that Tagney was primarily or contributorily negligent. The amount of property damage to the vehicle and Tag-ney’s medical expenses were stipulated.
The trial judge found that Bryant was acting within the scope of his employment with Defendant at the time of the collision, and rendered judgment against Defendant in favor of Northern Insurance for $700, and for Tagney in the amounts of $190 for property damage, and $67.50 special damages (all as stipulated), plus $500 for personal injury.
That Bryant’s negligence was the sole and proximate cause of the accident is conceded here on appeal, leaving only Defendant’s contentions: (1) that Bryant was not acting within the scope of his employment at the time of the accident; (2) that the trial judge committed reversible error by failing to allow it to impeach the testimony Bryant gave in a deposition taken by Defendant, but introduced by the Plaintiff-insurer; (3) that the award of $500 for cervical sprain is excessive.
Regarding Bryant’s scope of employment, Bryant was employed as office field manager at Defendant’s job-site near Gramercy, Louisiana. Though he owned the truck, involved in the collision, his employer paid him a daily rental for its use and bought his gasoline. The day before the accident Bryant left Gramercy for New Orleans to visit with acquaintances, and to discuss the possibility of working for another company. He spent the night in the City, arose early the next morning and, while driving north on Airline Highway between the New Orleans city limits and Moisant International Airport, the collision occurred. Two days after the accident Bryant voluntarily left Defendant’s employ and moved to Texas, where Defendant later took his deposition.
However, there is a dispute concerning where Bryant was going on the morning of the accident. Defendant contends that Bryant was merely returning to work in Gramercy after a social visit to New Orleans, and that the only stop he had planned to make was for breakfast; hence, Defendant is not liable because the general rule is that an employee, while on his way to and from his place of employment, is not considered as acting within the scope of his employment so as to subject his employer to liability for injury to third-persons caused by his negligent acts. Wills v. Correge, La.App., 148 So.2d 822; Boyce v. Greer, La.App., 15 So.2d 404.
Bryant, by deposition, testified that he was going to Moisant International Airport to pick up an expected shipment of “water tight night caps” for his employer before he returned to Gramercy, and that the primary motive for his trip to New Orleans was to pick up the shipment he had ordered the previous day, which he considered normal in view of his duties described by him as follows:
*746 “A Mari in the field, it is his responsibility to buy things needed for the construction of the job. And he doesn’t ask someone if he can go get it. He knows that is his duty to pick up these supplies and keep them rolling in. If it requires going after three o’clock in the morning, at midnight, or being out all night, he has to do it.”
The only evidence to contradict Bryant is the rather general statement of Leonard W. Clare, Defendant’s secretary-treasurer, who testified that, to the best of his knowledge, Bryant was not performing any services for Defendant in New Orleans on the day of the accident. Defendant insists that the trial judge committed reversible error by refusing to allow it to impeach Bryant.
t The record indicates that Bryant’s deposition was offered by Defendant in which event, under LSA-C.C.P. art. 1430, Bryant would be Defendant’s witness and unimpeachable by him. However, all parties now agree that the record is incorrect in this regard, and that Bryant’s deposition was offered by the Plaintiff-insurer.
! After Plaintiff offered Bryant’s deposition in evidence, Defendant then sought to introduce another sworn statement, made at the instance of the Defendant insurer’s adjuster, for -the purpose of impeaching Bryant’s testimony. The trial judge refused to allow this sworn statement in evidence under the’ erroneous impression that Bryant was Defendant’s witness. In this sworn statement Bryant stated he was on his way to Gramercy at the time of the accident, and intended to stop for breakfast on the way. However, when giving his deposition, two years later, Bryant was asked for an explanation of his failure to mention in his previous sworn statement the shipment at the airport, to which he replied that he did not think it important at that time. Even though the trial judge did not formally admit in evidence the prior statement, its contents are in the record, as Bryant was cross-examined thoroughly on the point.
Further, Bryant testified that the job superintendent, Chester Lake, knew that the shipment was due, yet Defendant did not call Chester Lake in rebuttal, nor any other job superintendent, nor explain his failure to do so, thus creating the inference that the testimony would have been unfavorable to Defendant. Walker v. Air Conditioning Distribution, Inc., 242 La. 653, 138 So.2d 7.
Since the substance of the “impeaching” statement is in the record, it would serve no useful purpose to remand the case for its formal admission. The finding that Bryant was acting within the scope of his employment at the time of the accident by the trial court appears eminently correct.
The only award questioned on appeal is the allowance of $500 for a cervical sprain suffered by the third-party Plaintiff, Tagney. Two days after the accident, Tagney began to notice a stiffness in his back, and two weeks later consulted an orthopedist, who prescribed hot baths. Although this treatment gave him relief and his injury did not, at any time, incapacitate him, Plaintiff testified he periodically suffered pain in his back until the time of the trial, a period of more than two years. Under the circumstances, a $500 award for pain and suffering is not excessive.
For the above reasons the judgment of the trial court is affirmed; Defendant to pay all costs in both courts.
Judgment affirmed.