LANDRY, Judge.
This is a suit for damages for personal injuries and medical expense sustained and incurred as the result of an automobile accident which happened October 19, 1962. Liability being conceded by defendant, Louisiana Creamery, Inc., the sole issue presented is quantum. The learned trial court rendered judgment in favor of plaintiff, Louis Scott, in the sum of $1,500.00 for personal injuries plus medical and hospital expense aggregating $996.17.
Plaintiff has appealed the aforesaid judgment contending the trial court erred in: (1) Awarding only the sum of $1,500.00 for appellant’s personal injuries, it being plaintiff’s contention the award should be increased; (2) Denying appellant’s claim for future medical expense which plaintiff maintains should be assessed at the minimum sum of $750.00; and (3) Failing to award plaintiff loss of earnings amounting to $750.00.
Appellant, a negro farmer-laborer, forty-five years of age, was injured when his moving vehicle was struck from the rear by a truck operated by one of defendant’s employees. Immediately following the accident plaintiff was seen by Dr. Frank L. Jones, General Practitioner, who diagnosed appellant’s condition as moderately severe cervical sprain, (commonly referred to as a “whiplash” type injury), accompanied by muscle spasm but without fracture or dislocation. Dr. Jones rendered emergency treatment and prescribed medication but did not confine plaintiff to a hospital. He considered the prognosis good and expected appellant’s full recovery.
On October 22, 1962, three days following the accident, plaintiff sought treatment from Dr. C. Austin Meng, General Practitioner, to whom appellant narrated a history of being injured in an automobile accident of the nature above indicated. Appellant complained of head, neck and back pains. Examination by Dr. Meng disclosed pain on motion in all directions. Dr. Meng also noted spasm of the left paravertebral muscles coupled with tenderness and some palpable masses of muscle tissue. Dr. Meng hospitalized plaintiff for a period of ten days during which X-ray examination revealed some narrowing of the L-3 and L-5 intevertebral spaces. Appellant’s condition was diagnosed by Dr. Meng as a “whiplash” with what was at first thought to be severe muscle strain. Under Dr. Meng’s direction plaintiff received conservative treatment consisting of muscle relaxants, diathermy and sound therapy. Plaintiff’s condition was ultimately diagnosed by Dr. Meng as “mild to moderate strain.” Appellant remained in the hospital under Dr. Meng’s care for a period of ten days following which he was fitted with a lumbo-sacral support. After his discharge plaintiff showed continued improvement until January, 1963, at which time he began to complain of pain in his left leg. This development prompted Dr. Meng to refer appellant to Dr. Duane Forman, Neurosurgeon, in March, 1963. In April, 1963, plaintiff was hospitalized again because of continued complaints of pain, especially in his left leg. At this time plaintiff was placed in traction for a few days and then discharged. Plaintiff was seen by Dr. Meng as an outpatient until some time in May, 1963, at which time Dr. Meng felt plaintiff was completely free of symptoms and possessed full range of motion without pain. He advised plaintiff to return to his former occupation and perform all aspects thereof excepting heavy lifting. Dr. Meng did not see plaintiff again until March, 1964, at which time plaintiff complained of pain and weakness in his left leg. The last occasion on which Dr. Meng saw appellant was April 20, 1964, on which date he considered plaintiff’s condition “still O.K.”.
On March 5, 1963, appellant was seen by Dr. Duane Forman pursuant to re *110 ferral by Dr. Meng. Plaintiff complained of pain and tenderness in the back from the neck down on both sides but primarily in the area of the left lower back. Appellant exhibited diminished sensation to pin prick on the left low back from the last rib or 12th thoracic vertebra down to the buttock. Dr. Forman found all back movement greatly limited by pain. He also observed tightness of the low back muscles which condition he found difficult to evaluate because plaintiff was overweight and heavily muscled.
Plaintiff was again seen by Dr. Forman upon plaintiff’s admission to the hospital by Dr. Meng in April, 1963. Examination at this time revealed virtually the same conditions previously observed. Dr. For-man stated it was his intention at this time to perform a myelogram but appellant responded so well to traction the myelogram was never performed. In March, 1964, Dr. Forman again saw plaintiff who then stated he had gotten along fairly well until approximately two months previous when appellant attempted to return to work. In this connection it is shown by appellant’s own testimony that following his discharge by Dr. Meng in May, 1963, plaintiff resumed at least a portion of his former duties shortly thereafter. Because of certain subjective complaints listed by appellant in March, 1964, Dr. Forman was of the opinion plaintiff was suffering from a sciatic nerve involvement produced by a ruptured disc. Examination of the X-rays taken upon plaintiff’s initial hospitalization in October, 1962, led Dr. Forman to believe the condition of the L-3 and L-5 intervertebral spaces shown thereon antedated the accident in question. In substance Dr. Forman testified that if plaintiff continued to complain of pain, he should undergo a myelo-gram to check the possibility of a ruptured disc. While he was of the opinion plaintiff may have had a ruptured disc, his diagnosis was based solely on appellant’s subj ective complaints.
Plaintiff was seen by Dr. Richard B. Means, Jr., Orthopedic Surgeon, on July 29, 1963. Dr. Means found no muscle spasm but did observe some tenderness in the region of the lateral and posterior aspects of the neck and low back. Neurological examination by Dr. Means proved negative as did also sciatic nerve traction tests administered. At this time Dr. Means found appellant free from any residual disability whatsoever attributable to the accident. Dr. Means especially recalled that he asked appellant about radiating leg pains and appellant replied he had none. Dr. Means was of the opinion plaintiff was not suffering from a herniated disc and that any ailment suffered by plaintiff on the date of his examination did not result from the accident.
Appellant testified in substance that prior to the accident he was free of complaints and pursued his occupation of farmer-laborer without pain or discomfort. Following the acident he was beset with headaches, back and neck pain and eventually pain in the legs, principally the left lower leg which at times seemed “numb”. He further stated his present complaint is primarily confined to the left leg although he occasionally has pains in his low back.
We believe the record preponderates in favor of the conclusion reached by our learned colleague below, namely, that plaintiff sustained a mild to moderate neck and back strain in the accident in question. The medical testimony does not establish that plaintiff’s leg condition, which Dr. Forman attributes to an involvement of the sciatic nerve, resulted from the accident. The weight of the medical evidence gives the clear impression that if plaintiff is suffering from a herniated disc, such condition arose subsequent to the accident.
It further appears that following his discharge by Dr. Meng in May, 1963, appellant resumed the major portions of his employment, notwithstanding his sub *111 sequent contrary statement to Dr. Forman. We find, as did our esteemed brother below, the preponderance of evidence establishes that for all practical purposes plaintiff was fully recovered from the effects of the accident in May, 1963. Under such circumstances the award of $1,-500.00 for personal injuries does substantial justice between the litigants at bar. Degeyter v. Trahan, La.App., 113 So.2d 808.
Appellant’s claim for future medical expense was properly denied by the trial court. The record discloses only that Dr. Forman was of the opinion appellant may have to undergo an operation for relief from a possible herniated disc to ease the pain in appellant’s left leg. As previously shown, the existence of such condition has not been established with reasonable certainty. Assuming arguendo, such condition does exist, appellant has not proven by a preponderance of evidence that it resulted from the accident upon which his claim is predicated.
There remains the claim for lost earnings. In this regard appellant gave vague testimony respecting income allegedly earned from farming operations, hay baling and manual labor performed for other parties. He admittedly kept no records of income or expenses although he reputedly employed others at times to operate his tractor and hay baling equipment. Plaintiff conceded his earnings for the period 1960-1963 were insufficient to necessitate his filing Federal Income Tax Returns for said years. Although he maintained his hay baling activities grossed 10{1 per bale, he was unable to translate the unit cost into dollars and cents as he kept no records of either the number of bales processed or his costs of operation. With respect to his income from farming and labor performed for others, his testimony was equally vague, unclear and uncertain. It is settled law that general and vague estimates of lost earnings are insufficient proof on which to base recovery for such an element of damages. Smith v. Marquette Casualty Company, La.App., 169 So.2d 750, and cases therein cited. It is also settled that where a claimant’s earnings vary they need not be established with mathematical exactitude but may be shown through other means, as, for example, earnings established during the previous year. See Fontenot v. Grain Dealers Mutual Insurance Co., La.App., 170 So.2d 513, and cases cited therein. In the instant case the record is barren of proof of earnings in former years. On the contrary the proof is to the effect plaintiff’s former earnings were such that he was not required to report same for Federal Income Tax purposes. Under such circumstances no award for lost earnings may be made herein. Smith v. Marquette Casualty Company, supra.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.